Taylor, Chief-Justice,
 

 delivered the opinion of the Court:
 

 The object of this bill is to compel the specific execution of a parol agreement made between Bagley and the complainant for the sale of a tract of land lying in Chatham County. The contract set forth in the bill has been established by the verdict of a jury
 
 ;
 
 and it is admitted that the bonds which were to be given by the complainant, were executed by him and tendered to the defendant, according to the terms of the agreement; or to speak with more precision, the bonds are admitted to have been tendered,
 
 *
 
 ' and the jury have found that the complainant has performed his part of the agreement. All the facts necessary to a decree for the complainant have been established, and the case is ripe for a final determination, if the Court has authority to make one, under all the circumstances. Its authority to do so, has been contested upon two grounds ; 1st, Because the contract was made by parol, and it is alleged there has been no partial performance. 2d, Because no days were appointed on which the money was to be paid ,• the agreement being merely, that the several payments were to be made in the fall of the respective years when they became due.
 

 "With respect to the first objection, it might be sufficient to answer, that the practice of decreeing the specific exe
 
 *36
 
 cution of parol agreements for the conveyance of land, ^as ^eGn ^00 l°nS’ established in this state, and too uniformly persevered in by the Courts of Equity, to be now abolished, because the propriety of its origin may be doubted. It is not easy to arrive at a certain conclusion one way or the other, as to the practice in England before the Statute of Frauds and Perjuries. There are authorities both ways, and the more ancient ones are in favor of the jurisdiction. In 1467, it is said by a Judge, “ that if I promise to build you a house and do not perform my promise, you have your subpoena,’” and in 1505, Fineux, Chief-Justice, speaking of the different remedies given in the Courts for the non-performance of contracts, observes,
 
 “
 
 that if a man bargain with another that he shall have his land for
 
 101.
 
 and that he will make him an estate therein by such a day, and he does not make the estate, an action upon the case lies ; but in that he shall only recover damages ,• but by subpoena, the Chancellor may compel him to execute the estate, or imprison him.”
 
 *
 
 On principle too, it would seem that such a jurisdiction might have been correctly exercised. Before the statute of frauds and perjuries in England, the only contracts and dispositions of property, real or personal, which were necessary to be put in writing, were of property lying in grant, as lights and future interests, and that species of real property to which the name of incorporeal heredita-ments applies. These were always authenticated by a deed
 
 ;
 
 and the statute of 32 Hen. 8, ch. 1, which gave to the owners of land a partial power of disposing of their estates by will, directed such will to be declared in writing; some contracts were also required by customary laws to be in writing : but as a general rule, no writing was necessary ; for even estates in land might be completely transferred by a symbolical delivery in the presence of neighbors, however useful the precaution might be of s’ecording the transaction by a charter of feoffment.
 
 †
 
 It
 
 *37
 
 . . And as seems indeed that Courts of Equity were cautious in former times, as they ought always to be, of relieving bare parol agreements for lands, where the agreement has not been signed by the parties, nor any money paid.
 
 *
 
 this branch of their jurisdiction is governed in a peculiar degree by sound discretion, cases may be found where they have refused relief for the want of a part performance. The subject is examined in the late edition of “
 
 Sugden’s Law of
 
 Vendors,” 101, 114.
 
 “
 
 There are four cases in Tothill which are previous to the statute, of frauds, and appear to be applicable to the point under consideration ; for equity, even before the statute, would - not execute a mere parol agreement not in part performed. In the first case, which was heard in the 38th Eliz. relief was denied, because it was but a preparation for an action on the case.
 
 †
 
 In the two next cases, which came on in 9th Jac. 1, parol agreements were enforced, apparently on-account of the payment of very trifling parts of the purchase money
 
 ;
 
 but the particular circumstances of these cases do not appear.”
 
 ‡
 

 The subject is left by tills writer nearly in the same obscurity in which it was before, not from any defect in him, but from the intrinsic difficulty of the question. Enough has been cited to shew that the jurisdiction is fairly applicable to the case before the Court. While, however, no doubt is entertained of the jurisdiction, the Court is fully impressed with the xmportandf and necessity of an extremely guarded and cautious exercise of it. As men cannot by law part with their freeholds without deed, so Equity should follow the law as nearly as may be, and require complete and satisfactory proofs that a contract for the sale of land was deliberately made. There should be not only full evidence, but a decided preponderance in favor of the existence of the contract; affording to the mind a conviction not less satisfactory than that which arises from a contract in wiiting. Loose conversations, inadvertent assertions and inchoate agreements, ought to be carefully guarded
 
 *38
 
 against
 
 ;
 
 and where it is understood that a Court of Equity AY*11 no^ ^en<^ ^d eidbrcc a parol agreement, unless it be established by plenary evidence, a salutary caution will inspired in those, who, in good faith, make such contracts in future.
 

 As to the second objection, though no day was fixed for the payment of the bonds, yet it was agreed that the complainant should pay at the fall: he consequently had until the last day of the fall to do so. As where a man is bound to pay money on a certain day, or in a certain year, he has to the last minute of the first, and the last minute of the last day of the last, to make the payment. The same rea-' son applies to a certain season. But if it were otherwise, as no objection was made on that ground when the bonds were tendered, it is to be intended that the days of payment were fixed according to the seller’s wish.
 

 The substance of the decree agreed upon by the Courtis, that a reference bo made to the Master to compute the sums due by the contract, w7ith interest from the times they respectively became due, until a day to be prescribed by the Court of Equity for Chatham, for the payment of the money. That he also take an account of the rents and profits from the last day of November, 1811, when the complainant was to have been put into possession, until the aforesaid day
 
 ;
 
 which latter sums, when ascertained, are to be deducted from those due on the bonds ffand the residue, if any, is to be paid to the Defendant Bagley; upon which, Harris should be decreed to convey the land described in the bill, to the complainant, with covenants against his own incum-brances, and a covenant against all claiming under him
 
 ;
 
 in which deed Bagley should join and enter into a general warranty
 
 ;
 
 the deed to be approved of by the Master.
 

 *
 

 In making up the issues in this case, the allegation of the bill that the bonds had been executed and tendered, was omitted to be submitted to the jury. The case was amended in this Court by the counsel, by having the allegation of the bill as to the execution and tender of the bonds, admitted as true.
 

 *
 

 1 Maddock, 287.
 

 †
 

 Roberts on Frauds 2.
 

 *
 

 1 Fonb. 175,
 

 †
 

 Tothill 135.
 

 ‡
 

 Ibid. 206, 228.